# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WALGREEN CO., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 16-1040-SLR |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| THERANOS, INC., | ) | |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |
| | ) | |

## OPENING BRIEF IN SUPPORT OF
## THERANOS, INC.'S MOTION TO DISMISS

Of Counsel:
Sean Eskovitz (*pro hac vice*)
WILKINSON WALSH +
ESKOVITZ LLP
11726 San Vicente Boulevard
Suite 600
Los Angeles, CA 90049
(424) 316-4000
seskovitz@wilkinsonwalsh.com

Brant W. Bishop, P.C. (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
WILKINSON WALSH +
ESKOVITZ LLP
1900 M Street, NW
Suite 800
Washington, DC 20036
bbishop@wilkinsonwalsh.com
kgostin@wilkinsonwalsh.com

Gregory P. Williams (#2168)
Kelley E. Farnan (#4395)
RICHARDS, LAYTON &
FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
williams@rlf.com
farnan@rlf.com

*Attorneys for Defendant*

Dated:  January 5, 2017

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

BACKGROUND .................................................................................................................. 3

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT ........................................................................................................................ 4

I.   The Court Should Dismiss Walgreen's Claims for Repayment of the $40 Million
     Note (in Counts I-III) Because the Complaint Fails to Allege Any Basis on Which
     Walgreen Is Entitled to Such Repayment .............................................................. 4

     A. Walgreen is not a party to the Note and lacks standing to bring any claim to
        recover under it. ............................................................................................... 5

     B. Walgreen does not allege any breach entitling it to a refund of the $40 million
        payment through the Note *or* any damage it suffered related to the Note. .................... 6

        1.  Walgreen fails to allege that Theranos breached any provision of the MSA
            relating to the Note ................................................................................... 7

        2.  Walgreen has failed to allege any breach of the Note itself. .................................. 8

        3.  Walgreen does not allege that it suffered any damage from Theranos'
            actions related to the Note ....................................................................... 10

II.  The Court Should Dismiss Walgreen's Claim for Breach of the Implied Covenant
     of Good Faith and Fair Dealing (Count III) Because That Claim Ignores Obligations
     to Which the Parties Agreed And Seeks to Impose Obligations to Which the Parties
     Did Not Agree. ................................................................................................. 11

     A. Walgreen's failure to comply with its contractual notice-and-cure obligation
        precludes it from demanding a refund of the Innovation Fee based on Theranos'
        alleged breach of the implied covenant. ............................................................ 11

     B. Walgreen cannot use an implied covenant claim to impose a new contractual
        requirement that Theranos use finger sticks for blood testing. ................................. 13

CONCLUSION ................................................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                               **Page(s)**

*Allen v. El Paso Pipeline GP Co.*
113 A.3d 167 (Del. Ch. 2014) ................................................................... 15

*Ampro Computs., Inc. v. LXE, LLC*
2015 WL 5257153 (D. Del. Sept. 9, 2015) ................................................. 10

*Anderson v. Wachovia Mortg. Corp.*
497 F. Supp. 2d 572 (D. Del. 2007) ........................................................ 7, 8

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ...................................................................................... 4

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ...................................................................................... 4

*Blaustein v. Lord Balt. Capital Corp.*
84 A.3d 954 (Del. 2014) .............................................................................. 15

*Carteret Bancorp, Inc. v. Home Grp.Inc.*
1988 WL 3010 (Del. Ch. Jan 13, 1988) ........................................................ 9

*Cornell Glasgow, LLC v. LaGrange Props., LLC*
2012 WL 6840625 (Del. Sup. Ct. Dec. 7, 2012) ........................................ 13

*Dunlap v. State Farm Fire & Cas. Co.*
878 A.2d 434 (Del. 2005) ...................................................................... 14, 15

*Gerber v. Enter. Prods. Holdings, LLC*
67 A.3d 400 (Del. 2013) .............................................................................. 15

*Great Bay Hotel & Casino, Inc. v. Tose*
1991 WL 639131 .......................................................................................... 9

*Harper v. Del. Valley Broads.*
743 F. Supp. 1076 (D. Del 1990) ............................................................... 13

*Insituform of N. Am., Inc. v. Chandler*
534 A.2d 257 (Del. Ch. 1987) ...................................................................... 5

*Kerns v. United States*
2012 WL 5877479  (E.D. Va. Nov. 20, 2012) ............................................ 13

*Nemec v. Shadur*
991 A.2d 1120 (Del. 2010) ..................................................................................... 11, 14

*Phunware, Inc. v. Excelmind Grp. Ltd.*
117 F. Supp. 3d 613 (D. Del. 2015)......................................................................... 10, 15

*Shockley v. McCarty*
677 F. Supp. 2d 741 (D. Del. 2009).............................................................................. 4

*U.S. Bank Nat. Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.*
2004 WL 1699057 ......................................................................................................... 13

*UD Tech. Corp. v. Phenomenex, Inc.*
2007 WL 28295 ............................................................................................................... 5

*VLIW Tech., LLC v. Hewlett-Packard Co.*
840 A.2d 606 (Del. 2003) .............................................................................................. 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 4

In 2012, Theranos, Inc. and Walgreen Co. entered into an agreement to give Walgreen the exclusive right to place Theranos' testing services in Walgreen stores, committing the future of Theranos' fledgling business to Walgreen's promise that it would maintain and promote their venture.  *See* Amended and Restated Theranos Master Services Agreement ("MSA") (Compl., Ex. A), Schedule A ¶ 2.[1]  Each party considered the other its "anchor" for entering this business, which the parties contemplated expanding on a nationwide, if not global, basis.  In anticipation of that expansion, and expressly to enable Theranos to develop the infrastructure required to meet Walgreen's scale, Walgreen paid Theranos an Innovation Fee.  Despite the early success of their venture—including the parties' successful completion of a "pilot program" to test the viability of the business model and opening dozens of Theranos Wellness Centers, with plans to open thousands more such centers in Walgreen stores across the country—in June 2016, Walgreen unilaterally and unjustifiably terminated the MSA governing the parties' relationship and demanded repayment of the Innovation Fee.

Walgreen's precipitous termination violated the MSA.  Among other things, the MSA requires any party seeking to terminate the parties' contractual relationship to provide notice of any alleged breach of a material provision and the opportunity to cure that breach.  When Walgreen provided Theranos with notice of alleged breaches of the MSA in early 2016, it identified a regulatory matter regarding one of Theranos' laboratories as the sole basis for its notice and requested that Theranos cease sending clinical tests to that laboratory for processing. To preserve the parties' business relationship, Theranos took this costly remedial action—

---

[1] Unless otherwise noted, references herein to the "MSA" are to Schedule B of the MSA ("Service Terms and Conditions"), which Walgreen attached to its Complaint as part of Exhibit A.

1

moving all testing to another Theranos laboratory and a third-party facility.  But Walgreen still purported to terminate the agreement, forcing Theranos to lose its anchor partner, to lay off a significant portion of its workforce, and to restructure its business.

 While Theranos intends to prove in this litigation that Walgreen improperly terminated the MSA and caused Theranos significant damage, this motion to dismiss is focused on narrowing Walgreen's meritless claims.  Walgreen's Complaint overreaches by (1) demanding, without any justification, accelerated repayment of the principal of a $40 million convertible note that a Walgreen affiliate, WVC Investments, LLC ("WVC"), purchased from Theranos (the "Note"); and (2) improperly asserting an alleged breach of the implied covenant of good faith and fair dealing that seeks to rewrite the parties' contract.

These claims should be dismissed as a matter of law.  Walgreen's demand for repayment of the principal amount of the Note (in Counts I-III) should be rejected, and those portions of the Complaint dismissed, because Walgreen alleges no factual basis for such a demand.  The Complaint (1) fails to establish that Walgreen has standing to bring suit when a separate entity, WVC, is the signatory and owner of the Note; and (2) alleges no breach of the MSA relating to the Note, no breach of the Note itself, and no damage to Walgreen as a result of any such alleged breach.  Furthermore, Walgreen's claim for breach of the implied covenant of good faith and fair dealing (Count III) should be dismissed in its entirety because Walgreen does not (and cannot) allege that it complied with its contractual obligation to give Theranos notice and an opportunity to cure before demanding repayment of the Innovation Fee based on this alleged breach.  In addition, Walgreen's implied covenant claim fails because, far from satisfying Walgreen's obligation to plead facts establishing that Theranos' use of blood testing methods other than finger sticks arbitrarily or unreasonably frustrated the overarching purpose of the parties'

agreement, the Complaint seeks to impose on Theranos obligations to which the parties did not agree in their written contract.

## BACKGROUND

This dispute arises from a contract, the MSA, through which Theranos and Walgreen partnered to develop and install Theranos Wellness Centers in Walgreen stores.  Compl. ¶ 3. After several years of development, during which Theranos gave Walgreen exclusivity and placed its trust in Walgreen's commitment to their venture, on June 12, 2016, Walgreen precipitously and unjustifiably terminated the contract, greatly damaging Theranos' business. *See* Compl. ¶ 114.

The parties executed the MSA in June 2012.  *See* Compl. ¶ 39.  Among other things, the MSA provided that Walgreen would pay Theranos a $100 million "Innovation Fee" to support the development of the parties' venture and, as partial consideration for Walgreen's commitments under the MSA, Theranos granted "[Walgreens] the right to purchase, or cause its affiliate WVC Investments, LLC to purchase a convertible promissory note [from Theranos] in the principal amount of $40 million."  MSA ¶¶ 6, 21.  WVC exercised the right to purchase the $40 million Note the same day the MSA was signed.  Compl. Ex. A at 28-33.  After executing the MSA, Walgreen paid Theranos the $100 million Innovation Fee in installments.  Compl. ¶ 41.

Through this lawsuit, in Counts I-III of its Complaint, Walgreen now demands, among other things, a "refund" of the Innovation Fee and "immediate repayment" of the principal amount of the Note that WVC purchased, based on allegations that Theranos breached the

Warranty provision of the MSA.[2]  Compl. ¶¶ 75, 143-173.  Count III of the Complaint seeks the same relief based on Walgreen's allegation that Theranos breached the implied covenant of good faith and fair dealing when it used methods other than its proprietary "finger-stick" technology for certain blood-testing services.  Compl. ¶¶ 174-185.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted."  A complaint will be dismissed if it does not contain sufficient factual matter which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3]  "The plausibility standard 'asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Shockley v. McCarty*, 677 F. Supp. 2d 741, 745 (D. Del. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In evaluating the plausibility of a plaintiff's claims, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements" are insufficient to state a claim.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

I.   **The Court Should Dismiss Walgreen's Claims for Repayment of the $40 Million Note (in Counts I-III) Because the Complaint Fails to Allege Any Basis on Which Walgreen Is Entitled to Such Repayment.**

Though the MSA gave Walgreen or an affiliate the right to purchase the Note, Walgreen's Complaint fails to plead facts alleging that Walgreen is the party who purchased the

---

[2] The "Warranty Provision" provides, in part, that both parties will perform their obligations under the MSA "(ii) in conformance with the level of care and skill ordinarily exercised by other professional companies o[f] a similar size and in similar circumstances; and (iii) in compliance in all material respects with all applicable laws."  MSA ¶ 19(c)(ii)-(iii).

[3] For purposes of this motion, the factual allegations in the Complaint are assumed to be true.

Note, or that any term of the MSA related to the Note—or of the Note itself—was breached. Walgreen's claims regarding the Note, asserted in Counts I-III, should be dismissed for multiple separate and independent reasons.  *First*, Walgreen has failed to allege facts demonstrating that it has standing to sue for repayment of the Note on behalf of WVC, the entity that purchased and signed the Note.  *Second*, Walgreen has not alleged any breach entitling it to a refund of the $40 million paid for the Note *or* any damage it purportedly suffered related to the Note.

A.     **Walgreen is not a party to the Note and lacks standing to bring any claim to recover under it.**

As a threshold matter, Walgreen's claim for repayment of the Note should be dismissed because Walgreen does not own the Note and does not allege how it is the proper party to bring a claim for repayment of the Note.  The Note was purchased and signed by "WVC Investments, LLC" and unmistakably defines Theranos' repayment obligations to WVC, not Walgreen.  *See* Compl. Ex. A at 32.  Under Delaware law, "only those entities that are parties to a contract or conferred rights to or under a contract have standing to enforce it."  *UD Tech. Corp. v. Phenomenex, Inc.*, 2007 WL 28295, at *6 (D. Del. Jan. 4, 2007) (dismissing breach-of-contract claims where plaintiff did not plead it was a party or intended third-party beneficiary to the agreements, and the agreements did not disclose plaintiff as such); *see also Insituform of N. Am., Inc. v. Chandler,* 534 A.2d 257, 270 (Del. Ch. 1987) (holding that non-signatories to a contract have no rights under the contract and thus no standing to assert claims under the contract)).  Because Walgreen is not the Note's owner, it has no standing to seek repayment.

Walgreen alleges that it "purchased a $40 million convertible note" from Theranos.  *See*, *e.g.*, Compl. ¶ 145.  *The Note, however, is an exhibit to the Complaint and contradicts Walgreen's allegation*.  No part of the Note identifies Walgreen as a party or beneficiary, and the Note was signed by Wade Miquelon on behalf of WVC Investments, LLC.   Compl. Ex. A at 32.

5

Further, the express terms of the Note demonstrate that WVC, not Walgreen, is the party with an interest in the Note.  Aside from specifically defining Theranos' repayment obligation as running to WVC, the Note underscores WVC's separateness from Walgreen, that WVC was not created solely as a Walgreen device for purposes of the transaction, and that WVC purchased the Note as its own investment:

> "Investor [WVC] has not been formed solely for the purpose of making this investment and is purchasing the Note for its own account for investment, not as a nominee or agent, and not with a view to, or for resale in connection with, the distribution thereof, and Investor has no present intention of selling, granting any participation in, or otherwise distributing the same."

Compl. Ex. A at 31 (Convertible Note ¶ 4(b)).

In addition, the Note bars WVC from assigning any of its rights to Walgreen: "Neither this Note nor any of the rights, interests or obligations hereunder may be assigned, in whole or in part, by [WVC] to any legal entity or person, other than a wholly-owned direct or indirect *subsidiary* of [WVC]."  *Id.* (emphasis added) (Convertible Note ¶ 5(a)(ii)).  Walgreen has not alleged that it is a subsidiary of WVC.  (It is not.)  And nowhere in Walgreen's Complaint does it claim that it received an assignment—which would be prohibited—of the Note from WVC.

Because Walgreen has alleged no facts establishing its right to stand in WVC's shoes and to sue on its behalf, the Court should dismiss Walgreen's Note-related claims in Counts I-III of the Complaint.

### B.    Walgreen does not allege any breach entitling it to a refund of the $40 million payment through the Note *or* any damage it suffered related to the Note.

Even if Walgreen had the standing it lacks to assert its Note-related claims in Counts I-III, those claims should still be dismissed for Walgreen's failure to allege a breach of any obligation under the MSA related to the Note, a breach of any obligation created by the Note itself, or any harm Walgreen suffered as a result of any such breach.

**1.    Walgreen fails to allege that Theranos breached any provision of the MSA relating to the Note.**

To survive a motion to dismiss on a contract claim, a "plaintiff must demonstrate . . . the breach of an obligation imposed by [the] contract." *See Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007) (quoting *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)).  The MSA sets forth clear requirements for Theranos' performance regarding the Note: "In partial consideration for Walgreens' commitments set forth in this Agreement . . . Walgreens shall have the right to purchase, or cause its affiliate WVC Investments, LLC to purchase a convertible promissory note in the principal amount of $40 million."  MSA ¶ 21.  The Complaint makes no claim that Theranos interfered with Walgreen's or WVC's efforts to purchase the Note.  In fact, the right was exercised (and the Note was purchased) the same day the MSA was executed:  On June 5, 2012, both Theranos and WVC signed the Note.  Compl. Ex. A at 32.

Rather than identify any alleged failure by Theranos to perform under the terms of the MSA regarding the Note, Walgreen's Complaint references regulatory findings and press statements, alleges breaches of two provisions of the MSA, and then leaps to the unsupported conclusion that it is entitled to a full refund of the $40 million paid for the Note.  *See*, *e.g.*, Compl. ¶¶ 148-51, 155, 172 ("As a result of Defendant's failure to comply with paragraph[s] 19(c)(ii)[-(iii)], Plaintiff is entitled, under the Agreement, to a refund of the Innovation Fee *and immediate repayment of its purchase of the convertible note*." (emphasis added)).  To properly plead a claim for breach of contract, however, a plaintiff must identify the contractual obligation that was allegedly breached.  *See Anderson*, 497 F. Supp. 2d at 581.

Nowhere in its Complaint does Walgreen allege or explain how a breach of paragraphs 19(c)(ii) or 19(c)(iii) of the MSA constitutes a breach of any obligation under, or related to, the

7

Note.  Nor does Walgreen allege or explain how those or any other provisions of the MSA entitle Walgreen to repayment of the Note.  Tellingly, the Complaint does not attempt to connect the MSA's termination provision to any ability to demand repayment of the Note.  *See* MSA ¶ 24(d)(i)(1).  The allegations in the Complaint are deficient because the MSA contains no mechanism requiring the Note to be repaid for any reason; the MSA does not permit Walgreen to demand repayment of the Note's principal based on alleged breaches, or Walgreen's purported termination, of the MSA.

### 2.    Walgreen has failed to allege any breach of the Note itself.

Walgreen's Complaint also fails to allege the basic requirements for a breach-of-contract claim regarding the Note itself; Walgreen does not claim that Theranos had any obligation to perform under the Note as of the date the Complaint was filed, much less that Theranos breached any such obligation.  *See Anderson*, 497 F. Supp. 2d at 581.  In fact, despite nearly 200 paragraphs of allegations, the Complaint's only mention of the terms of the Note is a passing reference to the Note's "convertible" nature—*i.e.*, that it would convert into equity under certain circumstances.  *See* Compl. ¶ 42.

Walgreen has failed to allege any breach of any term of the Note for good reason—the time for performance of the Note has not yet occurred, and Theranos has not breached any obligation under the Note.  Instead, the Note is repayable on the "Maturity Date," defined as the earlier of: (1) the date of Theranos' IPO, if any; (2) the effective date of a "Change of Control"; (3) 180 days from receipt by Theranos of a written demand for repayment, which can only be made if Theranos has not met the success criteria for the Pilot;[4] or (4) ten years after the date of

---

[4] Broadly, the "Pilot" program was a plan to place Theranos' testing services in a limited number of Walgreen stores in order to evaluate the viability of that business and testing model.  The Pilot

8

the Note.   Compl. Ex. A at 28 (Convertible Note ¶ 1(b)(i)-(iv)).   Because Walgreen has not alleged that any of these Maturity Date events occurred, Walgreen has no valid claim that Theranos is obligated to repay *any* of the Note's principal or to take any other action related to the Note.   Courts in Delaware reject claims based on alleged breaches of contractual promises that are not yet due.   *See*, *e.g.*, *Carteret Bancorp, Inc. v. Home Grp., Inc.*, 1988 WL 3010, at *5 (Del. Ch. Jan 13, 1988).

Further, Walgreen has failed to allege that any provision of the Note allows for a demand of repayment before the Maturity Date.   Instead, Walgreen now in effect seeks to accelerate the repayment of the Note without any legal basis.   Absent a "clear and certain" agreement by the parties permitting a demand for repayment before the Maturity Date, Walgreen is not entitled to such acceleration.   *Great Bay Hotel & Casino, Inc. v. Tose*, 1991 WL 639131, at *9 (D.N.J. Dec. 16, 1991) ("Absent [an acceleration clause, there will] be no such acceleration.   To be enforceable the option to accelerate must be clear and certain.   It will not be supplied by mere inference." (internal quotation marks omitted)).[5]

Walgreen has not alleged that Theranos failed to do anything required by the Note or that the Note permits a demand for early repayment.   That failure, combined with Walgreen's failure to connect any alleged breach of the MSA to any obligation to return the $40 million payment for the Note, is dispositive of Walgreen's Note-related claims.

---

provided a mechanism through which the parties could implement components of the MSA on a limited scale and determine, based on mutually-agreed-upon "success criteria," whether a "national rollout" would be appropriate.   Compl. Ex. A at 25-26. Walgreen's Complaint does not allege that the success criteria for the Pilot were not met.

[5] In addition, the "Entire Agreement" clause of the MSA prohibits adding terms to the agreement.   MSA ¶ 26(b).

### 3.    Walgreen does not allege that it suffered any damage from Theranos' actions related to the Note.

To survive a motion to dismiss, a plaintiff must also state the damage it claims was caused by an alleged breach.  *See Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015) ("In order to survive a motion to dismiss for failure to state a breach of contract claim, [a] plaintiff must demonstrate [the] breach of an obligation imposed by that contract [and] the resultant damage to the plaintiff." (internal quotation marks omitted)); *see also Ampro Computs., Inc. v. LXE, LLC*, 2015 WL 5257153, at *6 (D. Del. Sept. 9, 2015) (granting motion to dismiss where plaintiff failed to allege damage element of breach-of-contract claim).

Absent from Walgreen's Complaint is any allegation that Walgreen suffered damage stemming from the purchase of the Note or from any further conduct by Theranos related to the Note.  Courts do not permit plaintiffs to maintain contract claims when they have not alleged suffering any damage related to a claimed breach.  *See Ampro Computs., Inc.*, 2015 WL 5257153, at *6.  Even if Walgreen had any interest in the $40 million payment—which it does not—Walgreen has failed to plead how it has been damaged by any of Theranos' conduct, much less in the full amount paid for the Note.  *See*, *e.g.*, Compl. ¶ 155.  As discussed above, Theranos has no obligation to repay any part of the Note before the Maturity Date, and the Complaint does not allege that the Maturity Date has occurred.

Much like its failure to identify any applicable breach, Walgreen's failure to identify any damage concerning its Note-related claims warrants their dismissal.

10

## II. **The Court Should Dismiss Walgreen's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count III) Because That Claim Ignores Obligations to Which the Parties Agreed And Seeks to Impose Obligations to Which the Parties Did Not Agree.**

Walgreen claims Theranos breached the implied covenant of good faith and fair dealing (Count III) based on the assertion that Theranos failed "to perform in accordance with the parties' expectations" that Theranos "would use its finger-stick technology when performing blood-testing services at Walgreens stores."  Compl. ¶ 180, 184.  This implied covenant claim should be dismissed, for two separate and independent reasons.  *First*, Walgreen may not pursue its claim for a "refund" of the Innovation Fee based on an alleged breach of the implied covenant because Walgreen purported to terminate the MSA without ever providing the contractually required notice of Theranos' alleged default and an opportunity to cure it.  *See* MSA ¶ 24(c).  *Second*, far from alleging facts to plead that Theranos acted arbitrarily or unreasonably in a way that frustrated the overarching purpose of the parties' agreement, as the law requires, Walgreen's implied covenant claim seeks to impose obligations on Theranos to which the parties did not agree.  *See Nemec v. Shadur*, 991 A.2d 1120, 1128 (Del. 2010).

### A. **Walgreen's failure to comply with its contractual notice-and-cure obligation precludes it from demanding a refund of the Innovation Fee based on Theranos' alleged breach of the implied covenant.**

The MSA precludes Walgreen's attempt to seek a refund of the Innovation Fee based on its allegation that Theranos breached the implied covenant of good faith and fair dealing.  Walgreen's express purpose in this lawsuit is to justify its termination of the MSA and to collect on its demand that Theranos refund the Innovation Fee.  *See* Compl. at 43, and ¶ 184.  But the MSA has specific notice-and-cure procedures that must be satisfied before any such demand is permitted, and Walgreen has not alleged compliance with those requirements for its implied covenant claim.

11

The MSA is unequivocal in its requirement that Walgreen provide notice and an opportunity to cure before it may terminate the MSA:

> If either party breaches a material provision of this Agreement and fails to cure such breach within thirty (30) calendar days after receiving written notice of the breach, the nonbreaching party shall have the right to terminate this Agreement at any time until such cure; provided if a breach cannot be cured within thirty (30) calendar days but is capable of cure, the breaching party will not be in default if, within thirty (30) calendar days of receiving notice of breach, in good faith, it begins and continues to attempt to cure the breach. In such case, the breaching party will have a reasonable time to cure the breach, but not to exceed sixty (60) days, before being in default.

MSA ¶ 24(c).  There are no exceptions to these express requirements.  Moreover, termination for cause pursuant to this above-quoted provision is a contractual prerequisite to Walgreen's claim for return of the Innovation Fee.  *See* MSA ¶ 24(d)(i)(1); *see also* Compl. ¶¶ 154-55, 171-72.

Because Walgreen makes no attempt to suggest that it complied with these requirements regarding its implied covenant claim, it cannot justify its unilateral decision to terminate the MSA based on an alleged breach of an implied covenant concerning finger-stick blood tests. Walgreen does not allege that it ever provided written notice of this alleged breach of the implied covenant, let alone that it provided an opportunity to cure this alleged breach.  *See* Compl. ¶¶ 174-85; *see also* MSA ¶ 24(c).  In fact, the Complaint fails to allege that either Walgreen's January 28, 2016 notice of Theranos' alleged breach of the MSA or its June 12, 2016 letter purporting to terminate the MSA identified the use of other blood-draw methods as a basis for breach or termination.  Compl. ¶¶ 74-75, 114.  Without satisfying the contractual notice-and-cure requirement, Walgreen cannot now seek a refund of the Innovation Fee based on an alleged breach of the implied covenant.

Notice-and-cure requirements, such as the above-quoted provision from the MSA, are designed to keep deals together, rather than making them vulnerable to positions developed for

12

purposes of litigation. "Courts in our State and beyond have recognized that contractual notice and cure provisions cannot be ignored no matter how urgently parties may seek to do so when prosecuting breach claims in litigation." *Cornell Glasgow, LLC v. LaGrange Props., LLC*, 2012 WL 6840625, at *13 & n.145 (Del. Sup. Ct. Dec. 7, 2012) (collecting cases). And courts routinely reject breach-of-contract claims based on a plaintiff's failure to comply with a notice-and-cure provision. *See, e.g.*, *id.* at *14; *Harper v. Del. Valley Broads.*, 743 F. Supp. 1076, 1083-84 (D. Del 1990) (enforcing notice-and-cure provision to bar certain breach-of-contract claims), *aff'd*, 932 F.2d 959 (3d Cir. 1991); *U.S. Bank Nat. Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.*, 2004 WL 1699057, at *3 (Del. Ch. Jul 29, 2004) (granting motion to dismiss based on plaintiff's failure to allege compliance with contractual notice-and-cure provision); *see also Kerns v. United States*, 2012 WL 5877479, at *4-5 (E.D. Va. Nov. 20, 2012) (dismissing claim for alleged violation of implied covenant of good faith and fair dealing due to plaintiff's failure to comply with contractual notice-and-cure protocol).

This Court should do the same here. Walgreen does not allege that it ever gave Theranos notice that Walgreen regarded the failure to use finger-stick blood draws as a breach of good faith and fair dealing—much less that it gave Theranos a reasonable opportunity to cure that alleged breach. Because Walgreen failed to satisfy those contractual requirements, it has no basis to demand a refund of the Innovation Fee under the MSA for breach of the implied covenant of good faith and fair dealing. The implied covenant claim should be dismissed on this ground alone.

## B. Walgreen cannot use an implied covenant claim to impose a new contractual requirement that Theranos use finger sticks for blood testing.

Walgreen's implied covenant claim should be dismissed for the additional and independent reason that the Complaint fails to allege facts to establish (1) that Theranos' use of

13

its finger-stick blood draw technique was the "overarching purpose" of the parties' bargain, *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (implied covenant claim limited to situations where one party "frustrates the 'overarching purpose' of the contract by taking advantage of [its] position to control implementation of the agreement's terms"); and (2) that Theranos acted "arbitrarily or unreasonably" in its decision to use test methods other than the finger-stick blood draw. *See Nemec*, 991 A.2d at 1126 (quoting *Dunlap*, 878 A.2d at 442).

To the contrary, Walgreen's Complaint makes clear that this is not a case warranting the "limited and extraordinary legal remedy" of an implied covenant claim. *Nemec*, 991 A.2d at 1128. Walgreen identifies "multiple references to the use of the finger-stick technology" in the MSA, Compl. ¶ 181, *see also* MSA ¶¶ 15-16, but none of these references state that finger-stick technology was required to be used or that finger-sticks were required to be used to the exclusion of other methods for drawing blood, including venous draws. Instead, the Complaint and MSA make clear that the overarching purpose of the parties' contractual relationship was far broader than just finger-stick testing; the parties intended for their agreement to enable "Walgreens to act as a patient service center" and *expressly contemplated other forms of specimen collection for Theranos tests at Walgreen stores*. MSA Schedule A ¶ 3. The MSA does not even require that Theranos use its own laboratories for all tests, explicitly stating that if Theranos does not have regulatory approval for certain tests or in certain jurisdictions, it would contract with an approved laboratory in the area to provide testing services. MSA ¶ 3(c) ("Should Theranos fail to obtain such regulatory agency approvals, Theranos shall contract with a local provider of laboratory services, such provider to have obtained all necessary regulatory approvals necessary to provide laboratory services, to provide such test(s) at Walgreens.").

14

In fact, according to the Complaint, Walgreen learned that Theranos "had decided to transition from finger-stick blood draws to the traditional venous draws while its blood-collection device was being revised for FDA approval" many months before Walgreen purported to terminate the MSA.  Compl. ¶¶ 9, 58.  But, as noted above, the Complaint does not allege that Walgreen ever notified Theranos that this transition was somehow impermissible under the MSA—conduct that is plainly inconsistent with any suggestion that the use of finger-stick blood draws was the overarching purpose of the MSA.

Delaware courts have consistently held that the implied covenant "cannot be employed to impose new contract terms that could have been bargained for but were not.  Rather, the implied covenant is used in limited circumstances to include 'what the parties would have agreed to themselves had they considered the issue in their original bargaining positions at the time of contracting.'"  *Blaustein v. Lord Balt. Capital Corp.*, 84 A.3d 954, 959 (Del. 2014) (quoting *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 418 (Del. 2013)); *accord Phunware, Inc.*, 117 F. Supp. 3d at 628-29; *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 183 (Del. Ch. 2014).  If Walgreen had wanted to make finger-stick blood draws a required method for collecting certain or all samples, it could have bargained for and secured such a term.  *See Blaustein*, 84 A.3d at 959.  It did not do so, and the Court should not allow Walgreen to now use the implied covenant to "circumvent the parties' bargain."  *Dunlap*, 878 A.2d at 441.

While Walgreen claims that it had a reasonable expectation that Theranos "would use its finger-stick technology when performing blood-testing services at Walgreens stores," the Complaint does not even remotely allege, and the text of the MSA itself refutes, that the overarching purpose of the MSA would be thwarted—much less thwarted unreasonably and arbitrarily by Theranos—unless finger-stick technology were used for performing Theranos'

15

tests.   Compl. ¶ 180.   Walgreen's implied-covenant claim should also be dismissed for this reason as well.

## **CONCLUSION**

For all of the above reasons, Theranos respectfully requests that, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court dismiss with prejudice (1) Counts I-II of the Complaint insofar as they demand repayment of the Note and (2) Count III in its entirety.


*/s/ Kelly E. Farnan*

OF COUNSEL:
Gregory P. Williams (#2168)
Kelly E. Farnan (#4395)
920 North King Street

Sean Eskovitz (*pro hac vice*)
Wilmington, DE 19801
WILKINSON WALSH + ESKOVITZ
(302) 651-7700
LLP
williams@rlf.com
11726 San Vicente Boulevard
farnan@rlf.com
Suite 600
Los Angeles, CA 90049
(424) 316-4000
*Attorneys for Defendant*
seskovitz@wilkinsonwalsh.com

Brant W. Bishop, P.C. (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
WILKINSON WALSH + ESKOVITZ LLP
1900 M Street, NW
Suite 800
Washington, DC 20036
bbishop@wilkinsonwalsh.com
kgostin@wilkinsonwalsh.com


Dated:  January 5, 2017

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 5, 2017, I electronically filed the foregoing with the Clerk of Court using CM/ECF and caused the same to be served on counsel of record at the addresses and in the manner indicated below:

<u>VIA E-MAIL</u>

Kevin R. Shannon (#3137)
Arthur L. Dent (#2491)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
kshannon@potteranderson.com
adent@potteranderson.com

<u>VIA E-MAIL</u>

David A. Gordon
Kristen R. Seeger
Lawrence P. Fogel
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

_____*/s/ Kelly E. Farnan*_____
Kelly E. Farnan (#4395)
Farnan@rlf.com